ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EDGARDO DELGADO BRAS<br><br>Parte Recurrente<br><br>v.<br><br>LUMA ENERGY, LLC Y LUMA ENERGY SERVCO, LLC<br><br>Parte Recurrida | KLRA202400536 | *Revisión Judicial,* procedente de la Junta Reglamentadora de Servicio Público, Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEPR-QR-2024-0004<br><br>Sobre: Resolución respecto a *Moción de Reconsideración*, presentada por la parte querellante |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de octubre de 2024.

Compareció por derecho propio la parte recurrente, Lcdo. Edgardo Delgado Brás (en adelante, "licenciado Delgado Brás" o "Recurrente"), mediante recurso de revisión judicial presentado el 30 de septiembre de 2024. Nos solicitó la revocación de la *Resolución Final y Orden* emitida por el Negociado de Energía de la Junta Reglamentadora de Servicio Público de Puerto Rico (en adelante, "el Negociado de Energía") el 23 de agosto de 2024 y notificada el 27 de agosto de 2024. Dicha determinación fue objeto de una "**Moción de Reconsideración**" interpuesta por el licenciado Delgado Brás que fue denegada por el Negociado de Energía mediante *Resolución* del 9 de septiembre de 2024 y notificada al Recurrente al día siguiente.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, prescindimos de

la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal[1] y *confirmamos* la *Resolución* recurrida.

**I.**

El 3 de enero de 2024, el licenciado Delgado Brás presentó una "**Querella**" ante el Negociado de Energía contra LUMA Energy, LLC y LUMA Energy ServCo, LLC (en adelante y en conjunto, "LUMA"). Mediante la misma, el Recurrente solicitó la revisión del proceso de facturación implementado por este último, pues sostuvo que se estaba efectuando a base de su consumo bruto y no neto, considerando su sistema de placas solares. Adujo que ello constituía un error, toda vez que la cantidad que se exportaba y que es producida por energía solar no estaba relacionada con la compra de combustible, entre otras cosas.

Luego, el 23 de enero de 2024, LUMA presentó una "**Moción de Desestimación por Falta de Jurisdicción**". Alegó que el licenciado Delgado Brás incumplió con el requerimiento del Artículo 6.27 de la Ley Núm. 57-2014, según enmendada, conocida como "Ley de Transformación y ALIVIO energético", 22 LPRA sec. 1051 *et seq.* (en adelante, "Ley Núm. 57-2014") y el Artículo 4.07 del Reglamento Núm. 8863 del 1 de diciembre de 2016, conocido como "Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago" (en adelante, "Reglamento Núm. 8863").

Ante esto, el 30 de enero de 2024, el licenciado Delgado Brás presentó su "**Moción en Oposición a Desestimación Solicitada**". Mediante dicha moción, alegó que realizó siete (7) objeciones a facturas desde el mes de junio del 2023 y aclaró que su "**Querella**" no impugna el alto consumo, sino la forma errónea de facturación de LUMA conforme a la Cláusula de Reconciliación.

El 19 de abril de 2024 y el 20 de junio de 2024, respectivamente, el licenciado Delgado Brás presentó mociones solicitando que se revolvieran las mociones pendientes relacionadas a la solicitud de desestimación presentada por LUMA. El 23 de octubre de 2024, el Negociado de Energía

---

[1] 4 LPRA Ap. XXII-B.

emitió la *Resolución Final y Orden*, mediante la cual acogió la solicitud de desestimación por falta de jurisdicción presentada por LUMA y, además, ordenó el cierre y el archivo de ésta.

Inconforme con dicha determinación, el 6 de septiembre de 2024, el Recurrente presentó una "**Moción de Reconsideración**". Mediante la *Resolución* emitida el 9 de septiembre de 2024 y notificada al día siguiente, el Negociado de Energía denegó la solicitud de reconsideración presentada por este último.

Aún inconforme con lo anteriormente resuelto, el Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> **Primer error: Erró el Negociado de Energía al declararse sin jurisdicción alegando que "el recurrente" no cumplió con el procedimiento informal establecido en la Ley #57 del 2014, específicamente en su artículo 6.27 así como con el reglamento #8863 en su artículo 4.07.**
>
> **Segundo error:  La Ley #57 del 2014 así como el reglamento #8863 son violatorios del debido proceso de ley y en cuanto a la prohibición de cuestionar la cláusula de reconciliación son inconstitucionales.**
>
> **Tercer error:      Erró el Negociado de Energía al manifestar que "el recurrente" incumplió con el término de cinco días que nos fuera concedido para revisar nuestra moción de oposición a desestimación**.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión

judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia

administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas

y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

En lo pertinente a la controversia ante nos, la Ley Núm. 57-2014 fue promulgada con el propósito de fomentar la operación y administración de un sistema eléctrico eficiente y de costos justos y razonables. Con el fin de lograr dicho objetivo, se creó el Negociado de Energía, el cual se encarga de fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico. Así, dicha ley dispone que el Negociado de Energía tendrá jurisdicción primaria exclusiva sobre diversos temas. En detalle, el Artículo 6.4 establece lo siguiente:

(a)    El Negociado de Energía tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos:

[…]

**(2) Los casos y controversias relacionada con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica**. 22 LPRA sec. 1054c (énfasis suplido).

En otras palabras, cuando surgen controversias relacionadas a la verificación de facturas de las compañías de energía eléctrica a sus clientes por los servicios prestados, éstas deben ser atendidas primeramente por el Negociado de Energía, como foro con jurisdicción primaria exclusiva.

Ahora bien, el proceso para la revisión de las facturas eléctricas está detallado en el Artículo 6.27 del referido estatuto, el cual claramente establece lo siguiente:

(a)    **Antes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal** que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía. […]

(1) **Todo cliente podrá objetar o impugnar cualquier cargo, clasificación errónea de tipo de tarifa, cálculo matemático o ajuste de la factura de servicio eléctrico** y solicitar una investigación por parte de la compañía de energía certificada dentro de un término de treinta (30) días a partir de la fecha en que dicha factura sea depositada en el correo postal o sea enviada al cliente vía correo electrónico. […] Para poder objetar la factura y solicitar la correspondiente investigación, **la persona deberá pagar la cantidad correspondiente al promedio de las facturas no disputadas durante los últimos seis**

**(6) meses.** La compañía de energía certificada no vendrá obligada a iniciar la investigación hasta que la cantidad indicada haya sido pagada. […]

(5) […]

(d) **Al presentar su querella ante la Comisión[2] el cliente querellante deberá demostrar que ha cumplido con los requisitos establecidos en este Artículo**. De la misma manera, la compañía de servicio eléctrico querellada deberá establecer en su primera comparecencia ante la Comisión que han cumplido fielmente con los requisitos establecidos en este Artículo. 22 LPRA sec. 1054z (énfasis suplido).

En esta misma línea, el Reglamento Núm. 8863 fue promulgado con el propósito de establecer las normas que regirán los mecanismos y procedimientos que las compañías de servicio eléctrico pondrán a disposición de sus clientes para resolver las controversias que surjan en relación con las facturas que éstas emitan. Del mismo modo, dicho cuerpo reglamentario establece el procedimiento a seguir para objetar las facturas, el cual debe ser agotado antes de solicitar una revisión ante el Negociado de Energía. Específicamente, la Sección 4.07 del Reglamento Núm. 8863 requiere la siguiente información para tramitar una objeción de factura de luz:

1. El nombre del Cliente que presenta la objeción;

2. El número de cuenta de servicio;

3. El número de identificación de la Factura que se objeta;

4. Las razones que motivan la objeción;

5. Su número de teléfono, dirección física y postal, y dirección de correo electrónico;

6. Copia del recibo de pago del promedio de las Facturas conforme a lo establecido en la Sección 4.05 de este Reglamento. Si el cliente presentare su objeción por teléfono, deberá ofrece el número de confirmación del recibo del pago.

Toda objeción de Factura que no cumpla con lo dispuesto en esta Sección se tratará como si nunca hubiese sido presentada y no tendrá efecto jurídico alguno.

---

[2] Es menester destacar que, cuando en el estatuto se hace referencia a la Comisión o la Comisión de Energía, el Artículo 1.3 aclara que ello significará el Negociado de Energía de Puerto Rico. 22 LPRA sec. 1051a(j).

## C.

El debido proceso de ley es un derecho fundamental consagrado en el Art. II sec. 7 de nuestra Constitución y en las Enmiendas V y XIV de la Constitución de los Estados Unidos. En particular, se le reconoce al ser humano el derecho a la vida, a la libertad, y al disfrute de la propiedad; y el que ninguna persona sea privada de su libertad o propiedad sin el debido proceso de ley. Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Dicha garantía tiene dos vertientes, a saber: la sustantiva y la procesal. Rodríguez Rodríguez v. E.L.A., 130 DPR 562, 575 (1992). Bajo la vertiente sustantiva del debido proceso de ley, los tribunales examinan la validez de una ley, tomando en cuenta los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de los individuos afectados. Por otro lado, en su vertiente procesal, el debido proceso de ley establece las garantías procesales mínimas que el Estado debe proveerle a un individuo al interferir con los intereses de su propiedad o libertad. López Vives v. Policía de Puerto Rico, 118 DPR 219, 231 (1987).

Cónsono con lo anterior, se han establecido diversos requisitos con los que debe cumplir todo procedimiento adversativo para satisfacer las exigencias mínimas de un debido proceso procesal, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. Domínguez Castro v. ELA, 178 DPR 1, 48 (2010).

## III.

En el presente caso, el Recurrente nos solicita que revoquemos la *Resolución Final y Orden* a través de la cual acogió la "**Moción de Desestimación por Falta de Jurisdicción**".

Por estar íntimamente relacionados, adjudicamos el primer y segundo señalamiento de error esgrimidos por el licenciado Delgado Brás de manera conjunta. En síntesis, alegó que el Negociado de Energía erró al desestimar la "**Querella**" bajo el fundamento de que no se agotó el

remedio del procedimiento administrativo informal, conforme al Artículo 4.07 de la Ley Núm. 57-2014 y la Sección 6.27 del Reglamento Núm. 8863. Además, sostuvo que ambas legislaciones son inconstitucionales por violar su debido proceso de ley al no proveer un mecanismo adecuado para impugnar la cláusula de reconciliación.

Surge del expediente ante nuestra consideración que el Recurrente, previo a presentar la "**Querella**", objetó varias facturas mediante unas siete (7) cartas dirigidas a LUMA desde el mes de junio de 2023 hasta el mes de diciembre del mismo año.  Dichas misivas contienen la fecha en la cual suscribió la misma, número de cuenta, la fecha de la factura que comprende su objeción, los motivos de su objeción, su nombre y firma.

Tras un exhaustivo análisis del expediente ante nuestra consideración, hemos llegado a la conclusión de que el Recurrente no cumplió con los requisitos mínimos en su objeción, privando de jurisdicción al Negociado de Energía para atender los asuntos planteados en la "**Querella**". Esto es así, ya que la Ley Núm. 57-2014 y el Reglamento Núm. 8863 proveen un procedimiento específico para la revisión de las facturas eléctricas ante el Negociado de Energía sobre los siguientes asuntos, a saber: un cargo, cálculo matemático, ajuste o clasificación errónea en la tarifa o factura. No obstante, antes de iniciar dicho procedimiento, se requiere que se haya agotado el remedio del proceso administrativo informal.

En otras palabras, que se impugnen las facturas directamente al proveedor del servicio de energía eléctrica, en este caso, a LUMA. Sobre esto, el Reglamento Núm. 8863 incorpora una lista con los requisitos mínimos que debe contener la objeción de una factura. Entre ellos, se requiere que se provea información personal del cliente y que dicho cliente provea evidencia del pago promedio de sus facturas. Ante el incumplimiento de lo anterior, no se equivocó el Negociado de Energía al desestimar la "**Querella**" presentada por el Recurrente, pues el legajo apelativo demuestra que éste no cumplió cabalmente con el procedimiento reconocido tanto estatutaria como reglamentariamente y que era un

requisito *sine qua non* para activar la jurisdicción del Negociado de Energía. Específicamente, el Recurrente no logró demostrar que pagó la cantidad correspondiente al promedio de las facturas no disputadas durante los últimos seis (6) meses que le permitiera a LUMA iniciar el proceso informal requerido estatutariamente.

Por otro lado, contrario a lo argumentado por el Recurrente, una mera lectura de la Ley Núm. 57-2014 y del Reglamento Núm. 8863 revela que ambos cuerpos legales le garantizan a todo cliente que impugne una factura su derecho a un debido proceso de ley. Nótese, pues, que una vez culmina el procedimiento informal ante el proveedor de servicios de energía eléctrica, el cliente tiene el derecho de acudir ante el Negociado de Energía para que dicho ente sea quien adjudique cualquier controversia relativa al proceso de facturación de energía eléctrica. Por tanto, concluimos que nuestro estado de derecho sí incorpora las garantías mínimas que se exigen para resguardarle el derecho a un debido proceso de ley a todo ciudadano en nuestra jurisdicción.

Así pues, habiéndose determinado la falta de jurisdicción del Negociado de Energía para atender en los méritos la "**Querella**" presentada por el Recurrente, se hace innecesario atender el tercer señalamiento de error. Nótese que, mediante el mismo, el licenciado Delgado Brás, impugna una expresión incorporada en la *Resolución y Orden Final* por el Negociado de Energía que no está relacionada con la determinación en los méritos. De ahí se hace necesario recordar que la revisión apelativa que este Tribunal efectúa se da contra la decisión impugnada y no contra sus fundamentos. Ramos v. Hosp. Sub-Regional de Aguadilla, 111 DPR 744, 750 (1981).

Considerando todo lo anterior, concluimos que no se cometieron los señalamientos de error planteados en el recurso de epígrafe.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones